THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE KYJEN COMPANY, LLC, d/b/a Outward Hound, LLC | ) ) ) | |
| | ) | No. 23 C 15119 |
| *Plaintiff,* | ) | |
| v. | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| THE INDIVIDUALS, CORPORATIONS, | ) | Magistrate Judge Maria Valdez |
| LIMITED LIABILITY COMPANIES, | ) | |
| PARTNERSHIPS, AND UNINCORPORATED | ) | |
| ASSOCIATIONS IDENTIFIED ON | ) | |
| SCHEDULE A TO THE COMPLAINT, | ) | |
| | ) | |
| *Defendant*. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant ThinkPet, LLC's Motion for Summary Judgement. (Dkt. 88). Plaintiff, The Kyjen Company, LLC, brought this action for damages and equitable relief alleging that ThinkPet infringed on Kyjen's registered trademark for "Fun Feeder." (Dkt. 1). ThinkPet argues it is entitled to summary judgment because there is no issue of material fact, its use of "Fun Feeder" falls with the fair use exception, and that Kyjen cannot make out a prima facie case of trademark infringement. For the following reasons, the Court denies ThinkPet's Motion [88].

## BACKGROUND

### I. Kyjen's Dog Feeder Trademark

The following facts are undisputed, except where noted. Kyjen[1] sells dog feeders and uses the trademark "Fun Feeder" on all its packaging for its slow feeder pet bowls. (Dkt 96-4 ¶ 17, Exhibit 4). On July 20, 2017, Kyjen applied to register "Fun Feeder" as a trademark with the U.S.

---

[1] The Kyjen Company, LLC does business as Outward Hound and has its principal place of business in Centennial, Colorado. (Dkt. 96 ¶¶ 2–4).

1

Trademark and Patent Office. (Dkt. 96 ¶ 9). The office granted the application on February 27, 2018, under Registration No. 5,412,084. (*Id.* at ¶¶ 9–16). The Patent Office added a disclaimer to the mark, to which Kyjen agreed. The disclaimer stated: "No claim is made to the exclusive right to use the following apart from the mark as shown: "FEEDER[.]" (Dkt. 96-4). Though disputed, Kyjen maintains that it began marketing and selling pet feeding and drinking bowls designed for slow feeding as "Fun Feeders" in January 2017.[2] (*Id.* at ¶¶ 8–9; Dkt. 90-5 at 2, Exhibit E). Below is a picture of the packaging for one of Kyjen's fun feeder bowl.



(Dkt. 96-2 at 8, Exhibit 2).

---

[2] ThinkPet maintains that Kyjen only began using the phrase "Fun Feeders" in February 2018. (Dkt. 90 ¶¶ 20–21; Dkt. 90-6 at No. 1, Exhibit F).

Kyjen also uses the word, "fun" to describe and market its slow, pet feeder products. On its packaging, Kyjen states: "Multiple ridges and valleys help slow eating and add *fun* to mealtime[,]" the product "Promotes *fun* and healthy eating[,]" and it "help[s] furry friends eat at a *fun* & healthy pace[.]" (Dkt. 90 ¶¶ 22–28; Dkt. 90-2, Exhibit B at Nos. 71–92) (emphasis added). On its product listing webpages, Kyjen says its "bowls are made to hold in both *fun* and food as your dog forages through the *fun* patterns[,]" that its products have "*Fun*, Unique Designs[,]" and that its slow feeder bowls "make[] mealtime a *fun* and engaging challenge[.]" (Dkt. 90 ¶¶ 31–32) (emphasis added).

Kyjen's bowls appear as search results when users input "fun feeder bowl" across various search engines. For example, on Google, Kyjen's slow feeder bowls appear as sponsored and non-sponsored results. (Dkt. 96 ¶ 18; Dkt. 96-5 at 2, Exhibit 5). The first non-sponsored result links to a third-party site, Shop Yomp. (Dkt. 96-5 at 2). The next six results describe Outward Hound's "Fun Feeder" bowls and include one of its Amazon product listings. (*Id*. at 2–6). On Bing, Outward Hound's "Fun Feeder" bowls are listed first in the search results. (Dkt. 96 ¶ 19). On Amazon, the search yields four sponsored products not sold by Outward Hound but lists Outward Hound's "Fun Feeder" bowls as the top two non-sponsored results. (*Id.* at ¶ 20).

II. **ThinkPet's Alleged Trademark Infringement**

ThinkPet also sells slow feeder pet bowls on Amazon. (Dkt. 90 ¶ 2–10). Starting around June 5, 2023, ThinkPet modified the descriptions for its slow feeder bowl listings, which appear on Amazon, to include the phrase "Fun Feeder." (*Id.* at ¶ 3). This prompted Kyjen to file this lawsuit; Kyjen maintains that these Amazon listings infringe upon its trademark. (*Id.* at ¶ 2). In the accused listings, ThinkPet identifies "Super Design" or "ThinkPet" as the source or brand of the product throughout the listing. (*Id.* at ¶¶ 6–10). For example, in one listing, "SUPERDESIGN"

3

appears in all capital letters as the first word in the product description. (*Id.* at ¶ 7). Underneath the description in blue lettering, the listing tells customers they can "Visit the Super Design Store." (*Id.* at ¶ 8). Super Design is also listed as the brand. (*Id.* at ¶ 9). ThinkPet identifies itself as the entity selling the product twice on the listing pages. (*Id.* at ¶ 10). An example is pictured below.



(*Id.* at ¶ 5).

In these listings, "Fun Feeder" appears as two of thirty-four words in the product description and falls in the middle of the description: "Dog Slow Feeder Bowl 1 Cup Slow Feeding Dog Cat Bowls Slow Down Dog Bowl for Small Medium Breed *Fun Feeder* Slow Bowl Gulping Puppy Slow Feeder Bowl for Dry Wet Raw Food Non-Slip[.]" (*Id.* at ¶ 3; Dkt. 90-3, Exhibit C) (emphasis added). ThinkPet also describes its product as "fun" throughout its listings. For example, ThinkPet says that slow feeder bowl will help pets "Eat at a fun and healthy Pace[,]" that the products are "<u>FUN</u> AND HEALTHY," and suggests the pets will "Forag[e] for <u>Fun</u>." (*Id.* at ¶¶ 14–15) (underlining and capitalization in original).

4

Relevant to Kyjen's claims is a tool called Search Engine Optimization (SEO). SEO "helps search engines interpret a website's content and connects the site with users by delivering relevant and valuable results based on their search queries." (Dkt. 96 ¶ 22). Companies try to rank first among search engine results for relevant keywords that target the company's desired demographic by "strategically using relevant keywords throughout the title, description, and other fields[.]" (*Id.* at ¶ 23). Title optimization on Amazon listings similarly requires sellers to use high-volume keywords in the product's title to appear in relevant search results. (*Id.* at ¶¶ 23–24).

### III. Kyjen's Allegations

Kyjen alleges that ThinkPet infringed on its "Fun Feeder" trademark by including the mark in its Amazon product descriptions so that users searching for "Fun Feeders" would be shown ThinkPet's products. (Dkt. 1 ¶ 26; Dkt. 4; Dkt. 96 ¶ 24). On October 18, 2023, Kyjen filed the present suit against ThinkPet and 150 similarly situated defendants and, on December 27, 2023, ThinkPet was served. (Dkt. 1 ¶ 26; Dkt. 4; Dkt. 34). ThinkPet maintains that it did not know Kyjen registered its trademark until it was served. (Dkt. 90-1 at 4, Exhibit A, Response No. 2).

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see e.g., Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). A material fact is genuinely disputed when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party[.]" *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (cleaned up). The Court also gives the non-moving

party "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor[.]" *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (cleaned up). The Court does not make any credibility determinations or weigh conflicting evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Summary judgment should be denied when "a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted[.]" *White*, 829 F.3d at 841.

## DISCUSSION

ThinkPet makes two main arguments to support its Motion.[3] First, it argues that its use of "Fun Feeder" falls within the Lanham Act's fair use exception as a matter of law. Second, it argues that Kyjen cannot make out a prima facie case of trademark infringement because Kyjen cannot show a likelihood of customer confusion.

### I. Fair Use Defense

ThinkPet first contends it is entitled to summary judgment because its use of "Fun Feeder" is fair use under the Lanham Act. (Dkt. 89 at 5). Fair use is an affirmative defense, which "allows individuals to use otherwise trademarked language in a descriptive sense." *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019). A defendant can prevail on the fair use defense by showing (1) the defendant is not using the registered term as a trade or service mark, (2) that the term is descriptive of the defendant's goods or services and, (3) "that the defendant is using

---

[3] ThinkPet argues that Kyjen's Response [Dkt. 85] failed to comply with the Local Rule 7.1 by exceeding the 15-page limit without seeking the Court's leave and Local Rule 56.1, which requires the nonmoving party to assert additional factual allegations in a separate Statement of Material Facts. Therefore, ThinkPet urges this Court to strike Kyjen's Response. However, "[i]t is clear that the decision whether to apply the [local rules] strictly or to overlook any transgression is one left to the district court's discretion." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (quoting *Litte v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)). The factual issues in this case are not complex and Kyjen's failure to comply with the Local Rules did not interfere with the Court's ability to reach the merits of this case; therefore, the Court in its discretion, denies Plaintiff's request to strike Kyjen's Response. *See, e.g., Marciniak v. Brennan*, 2017 WL 8200181, at *2 (N.D. Ill. Dec. 14, 2017); *Gwinn v. City of Chicago*, 2025 WL 964089, at *2 n.2 (N.D. Ill. Mar. 31, 2025).

the term or device 'fairly and in good faith *only to describe* to users' those goods and services." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 953 (7th Cir. 1992) (quoting 15 U.S.C. § 1115(b)(4)) (emphasis added); *see Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015).

ThinkPet's fair use argument cannot prevail on summary judgment because a reasonable juror could find that ThinkPet did not use "Fun Feeder" in good faith for only descriptive purposes. 15 U.S.C. § 1115(b)(4). "[I]f the evidence establishes that the [defendant] intends to trade on the good will of the trademark owner by creating confusion as to the source or sponsorship, the use is not in good faith." Restatement (Third) of Unfair Competition § 28 cmt. d (Am. L. Inst. 1995); *Sorensen*, 782 F.3d at 725. While good faith must be judged by looking at an infringer's subjective purpose in using a trademark, an intent to create confusion among consumers "may be reasonably inferred from the similarity of the marks where the senior mark has attained great notoriety." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 934 (7th Cir. 2008) (discussing intended use of the mark in the likelihood of confusion analysis); *Sands*, 978 F.2d at 963 (noting that a junior using a well-known mark, out of an infinite number of marks, supports an inference of bad faith); *M.B.H. Enters., Inc. v. WOKY, Inc.*, 633 F.2d 50, 54 (7th Cir. 1980) (must look to accused infringer's subjective purpose in using the mark).

One way to demonstrate that a defendant is not using a trademarked term merely for a description is if the defendant's use creates "initial interest confusion." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002), *as amended* (Oct. 18, 2002). Initial interest confusion occurs "when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated." *Id.*; *see also Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996). "What is important, is not the

7

duration of the confusion, it is the misappropriation of [the trademark holder's] goodwill." *Promatek*, 300 F.3d at 812–13; *see Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1064 (9th Cir. 1999). Intending to confuse a consumer, even only temporarily, prevents a defendant from claiming the fair use defense because the defendant is using the mark for a purpose other than describing their product. 15 U.S.C. § 1115(b)(4).

Initial interest confusion is particularly relevant in the online space, as here. In *Promatek*, Equitrac used its competitor's trademark as a metatag for its website. 300 F.3d at 810. Metatags are HTML codes intended to describe the contents of a website. *See id.* at 810 n.1. If a phrase appears more frequently in a website's metatags, then "the more likely it is that the web page will be 'hit' in a search for that keyword and the higher on the list of 'hits' the web page will appear." *Id.* Through initial interest confusion, consumers learned about Equitrac's products before beginning a new search, and, therefore, Equitrac could benefit from using its competitor's goodwill. *Id.* This constitutes trademark infringement. *Id.* The Seventh Circuit noted that trademarks can potentially appear in metatags without violating trademark law, "but that they may only do so where a legitimate use of the trademark is being made." *Id.* at 814 n.2.

The facts in the instant case parallel *Promatek*. Kyjen alleges ThinkPet added "Fun Feeder" to its Amazon listings to increase its products' visibility and, therefore, intended to benefit from Kyjen's goodwill through initial interest confusion. Just as Equitrac could violate the Lanham Act by using the metatags to cause initial customer confusion and profit off the plaintiff's goods will, ThinkPet could violate the Lanham Act by using Kyjen's trademark for SEO that increased its visibility and benefit off Kyjen's goodwill. *See* 300 F.3d at 812. If true, ThinkPet would be using "Fun Feeder" for non-descriptive purposes and could not rely on the fair use defense. *See* 15 U.S.C. § 1115(b)(4); *Promatek*, 300 F.3d at 812–13. Because a reasonable juror could find that ThinkPet

8

used "Fun Feeder" to profit off Kyjen's goodwill, ThinkPet is not entitled to summary judgment on this ground.

A "dispute about a material fact is 'genuine' " only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247. Kyjen relies on several pieces of evidence to support its allegation. First, Kyjen provides evidence to explain SEO and how it functions through an employee declaration. (Dkt. 96 ¶¶ 21–24). Of course, the employee's allegation that ThinkPet used SEO is speculative as it is only asserted "[o]n information and belief[.]" (*Id.* at ¶ 21). Because speculative assertions would not be allowed at trial, the Court cannot consider them in summary judgment. *See* Fed. R. Civ. P. 56(e); *E.E.O.C. v. Admiral Maint. Serv., L.P.*, 174 F.R.D. 643, 647 (N.D. Ill. 1997). But the Court can still consider SEO and how companies rely on SEO to improve online marketplace visibility.

Second, Kyjen argues that "Fun Feeder" has become a strong source identifier for Kyjen's products. For one, Outward Hound appears in search results for "fun feeder bowl" across various search engines. (*Id.* at ¶¶ 18–20). On Google, it appears as the first sponsored product and its products are referenced in the second through seventh search results. (Dkt. 96-5 at 1, Exhibit 5). On Bing, Outward Hound is the first search result. (Dkt. 96-6 at 1, Exhibit 6). Finally, on Amazon, Kyjen products are the first two non-sponsored results. (Dkt. 96-8 at 1, Exhibit 8). Kyjen places the mark "Fun Feeder" on all its slow feeder bowls. (*Id.* at ¶ 17). Further, though the parties disagree, Kyjen alleges it began using the trademark in January 2017. (*Id.* at ¶¶ 8–9; Dkt. 90-5 at 2, Exhibit E). Taken together, the jury could find that "Fun Feeder" is a strong trademark for Kyjen's slow feeder bowls due, in part, to its brand recognition and marketing tactics. A jury may also consider it important that the two companies are competitors, that they sell similar products, and sell in the same market. (Dkt. 90-3 at 2, Exhibit C; Dkt. 90-10 at 2, Exhibit J).

9

This evidence may persuade a jury that ThinkPet's use of "Fun Feeder" was not coincidentally used to describe ThinkPet's bowl but rather used to gain visibility off of Kyjen's goodwill. An intent to create confusion among consumers "may be reasonably inferred from the similarity of the marks where the senior mark has attained great notoriety." *See AutoZone*, 543 F.3d at 934. For example, as is the case with a mark like "AutoZone"—if a brand is "nearly ubiquitous in the geographic area where the junior mark competes, a trier of fact can easily conclude that the creator" intentionally used its junior mark to confuse customers. *Id.* Here, Kyjen owns the senior mark and appears to dominate the online spaces associated with its mark. (*See* Dkt. 96-2; Dkt. 96-5; Dkt. 96-8). A reasonable jury may find that the marks are similar, the products are similar, the use of the marks are similar, and that Kyjen's "Fun Feeder" bowls have achieved a level of "notoriety", such that it is reasonable to infer that ThinkPet lacked goodwill when it used "Fun Feeder" to describe its products. *AutoZone*, 543 F.3d at 934.

Of course, ThinkPet can point to evidence against this conclusion. It can say it was only using "Fun Feeder" descriptively by pointing to the times that ThinkPet and Kyjen used "fun" to describe the bows. (Def.'s SOF ¶¶ 14–15, 22–28). Or that it lists itself multiple times as the source or brand of its slow feeders. (*Id.* at ¶¶ 6–10). Or how "Fun Feeder" makes up only two of thirty-four descriptive words in the listings. (*Id.* at ¶ 3) ThinkPet may also argue that Kyjen's mark is weak and descriptive by noting that Shop Yomp (a non-party company selling pet bowls) appears before Outward Hound on Google when users search "fun feeder bowl." (*See* Dkt. 96-5). But the weight of counterevidence is a question best left to the jury. *Abdullahi*, 423 F.3d at 773 (courts should not weigh competing evidence); *see Skiba*, 884 F.3d at 717 (courts must consider evidence in the light most favorable to the non-moving party when deciding a summary judgment motion).

10

Lastly, ThinkPet also argues that "a plaintiff must point to something more [than knowledge of the mark] that suggests bad faith" to survive summary judgment. *Sorensen*, 792 F.3d at 724; *SportFuel, Inc.*, 932 F.3d at 600. Kyjen has. It points to SEO, the evidence of the strength of the mark, and that the companies were competitors. (Dkt. 95 at 3–7). Kyjen is not saying that ThinkPet's potential knowledge of its trademark constitutes bad faith. Instead, it argues that the evidence leads to the reasonable inference that ThinkPet intended to benefit from its use of Kyjen's trademark to cause customer confusion. Because a reasonable jury could agree with Kyjen's argument based on the available evidence, ThinkPet's fair use defense fails.

## II.  Likelihood of Customer Confusion

ThinkPet next argues that even if the Court rejects its fair use defense, its use of "fun feeder" did not create any likelihood of consumer confusion, which independently entitles ThinkPet to summary judgment. (Dkt. 89 at 4). To succeed on a trademark infringement claim, a plaintiff must prove, among other things, that the defendant's use of the mark is likely to cause consumer confusion. *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 638 (7th Cir. 2001). "In assessing the likelihood of consumer confusion, [the Court] consider[s]:

> (1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the plaintiff's marks, (6) any evidence of actual confusion, and (7) the defendant's intent to palm off its goods as those of the plaintiff's.

*Promatek*, 300 F.3d at 812; *Packman*, 267 F.3d at 643. While none of the factors are dispositive and the weight of each will vary in each case, "the similarity of the marks, the defendant's intent,

11

and evidence of actual confusion are of particular importance." *Promatek*, 300 F.3d at 812; *Packman*, 267 F.3d at 643.

### a. Customer Confusions Factor Analysis

The first factor requires the Court to evaluate the similarity between the two marks. "[T]he test is not whether the public would confuse the marks, but whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *AutoZone*, 543 F.3d at 930 (citations omitted). In analyzing the first factor, courts "must compare the marks in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." *Sorensen*, 792 F.3d at 726 (citations modified).

Applying this test, a jury may find that the marks are similar in appearance and suggestion. Both parties sell pet bowls online and use the mark "Fun Feeder" as part of their advertising. *Promatek*, 300 F.3d at 812; *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001). There are, of course, differences as well. ThinkPet's incorporates "Fun Feeder" into a longer advertising description. Because, however, both parties use the trademarked words to sell products in the same space, there is a genuine factual dispute as to the similarity between the marks. *AutoZone*, 543 F.3d at 930

Second, the Court considers similarity between the two products. This requires asking "whether the parties' products are the kind the public might very well attribute to a single source." *AutoZone*, 543 F.3d at 931 (citations modified). Both Kyjen and ThinkPet sell dog bowls with ridges and valleys to slow down pets while eating. A jury, therefore, may believe that a consumer would think ThinkPet's bowls were associated with Kyjen's business. *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 678 (7th Cir. 2001) (" 'Closely related' products are those that

would 'reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner.") (cleaned up); *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1089 (7th Cir. 1988) (looking to whether the kind of product is one that the public might attribute to a single source to satisfy the product similarity factor).

Third, the Court considers whether the area and manner of use is similar; this means assessing "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *CAE*, 267 F.3d at 681. Though ThinkPet places the "Fun Feeder" mark in the middle of thirty-four adjectives, both parties put "Fun Feeder" in the description on their Amazon product listing. (Dkt. 90 ¶ 2–10; Dkt. 96 at 2–6). Further, both parties market their slow feeder pet bowls on Amazon. Overlapping marketing channels in the same digital spaces increases the likelihood of confusion among consumers encountering the parties' products. *AutoZone*, 543 F.3d at 932 (finding products are used in the same area and manner when both companies provided services in the Chicago area to members of the general public); *CAE*, 267 F.3d at 681–82 (looking at how the parties use the mark, whether it is used in the same channels of commerce, and whether the parties target the same general audience). A jury, therefore, could find that this factor weighs in favor of customer confusion. *See Waukesha Floral & Greenhouses, Inc. v. Possi*, at *11 (E.D. Wis. June 1, 2018) (factor three weighs in favor of infringement where both companies compete for same customers).

The fourth factor is whether customers will exercise a lesser degree of care in evaluating the two products. For this, courts look to whether the consumers are sophisticated and engage in negotiations when purchasing products. *CAE*, 267 F.3d at 683; *AutoZone*, 543 F.3d at 933. Additionally, Courts recognize that "[t]he more widely accessible and inexpensive the products

13

and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *CAE*, 267 F.3d at 683. Here, the products are widely available via Amazon and relatively cheap (under $15). (*See generally* Dkt. 96-6). A jury could find that the general public would not exercise care in selecting slow-feeder pet bowls and that the consumers are not particularly sophisticated.

Additionally, the degree of care factor carries additional weight in this case. In *Promatek*, the Seventh Circuit found that lack of care exercised by consumers was the most important factor in an initial interest confusion case because the consumer's lack of care leads to the initial interest confusion. *See* 300 F.3d at 812. Therefore, the fact that a reasonable jury may find consumers exercise a low degree of care in selecting dog bowls is particularly relevant.

Fifth, the Court considers the strength of the mark. "The term 'strength' as applied to trademarks refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular . . . source. The stronger the mark, the more likely it is that encroachment on it will produce confusion." *Roadget Bus. Pte. Ltd. v. PDD Holdings Inc.*, 2023 WL 4865005, at *5 (N.D. Ill. July 31, 2023) (citations omitted). A jury may find Kyjen's "Fun Feeder" mark is strong. As discussed above, a jury could consider Kyjen's marketing strategies, the search results that yield Kyjen products, and the length of time and frequency with which Kyjen uses the mark to conclude the trademark is strong. *CAE*, 267 F.3d at 685 (evidence of extensive expenditure to promote product demonstrates a mark is strong). In contrast, ThinkPet may point to its own evidence; specifically, that Kyjen does not produce any evidence of consumer testimony or surveys, *see Reddi Beverage Co. LLC v. Floral Beverages, LLC*, 2023 WL 8827978, at *9 (N.D. Ill. Dec. 21, 2023), but as stated above, the relative strength

14

of Kyjen's "Fun Feeder" mark remains an unsettled material fact. This precludes summary judgment. Fed. R. Civ. P. 56(a); *Reed*, 915 F.3d at 485; *Daugherty*, 906 F.3d at 609–10.

Sixth, the Court considers whether there is evidence of "actual" customer confusion. Kyjen has not presented any evidence of actual confusion. That does not require the Court to grant summary judgment against it. "[A]ctual confusion . . . is not required to prove that a likelihood of confusion exists." *CAE*, 267 F.3d at 685. In *Promatek*, a showing of actual confusion was not required for the court to find a likelihood of success on the merits in an initial interest confusion case. 300 F.3d at 812.

Seventh, the Court considers whether ThinkPet intended to "palm off" Kyjen's mark as its own. A reasonable jury could find that ThinkPet intentionally used "Fun Feeder" to gain views from consumers searching for Kyjen's products. In some circumstances, an intent to confuse may be reasonably inferred from the similarity of the marks where the senior mark has attained great "notoriety." *AutoZone*, 543 F.3d at 934. As previously discussed, a jury could find that Kyjen's trademark is strong and, perhaps, has achieved recognition in the pet bowl marketplace. As such, the jury could infer an intent to mislead customers into either buying ThinkPet's products or at least visiting ThinkPet's slow feeder bowl listings on Amazon.

### b. Conclusions Based on Factor Analysis

For these reasons, a reasonable jury could find that ThinkPet's use of "Fun Feeder" likely confused customers. ThinkPet's use of Kyjen's trademark could create customer confusion in six of the seven factors. Two of the factors, which a jury could find help show customer confusion—the similarity of the marks and the defendant's intent—are particularly significant. *Promatek*, 300 F.3d at 812; *Packman*, 267 F.3d at 643. The jury could also find that consumers lack care when shopping for slow feeder bowls, another important factor in initial consumer confusion cases. *See*

15

*Promatek*, 300 F.3d at 812; *CAE,* 267 F.3d at 686–87 ("[T]he district court must give appropriate weight to the factors that are particularly important based on the facts of each case.").

The likelihood of customer confusion is "ultimately a question of fact." *AutoZone*, 543 F.3d at 329; *see also Landry v. Post Consumer Brands, LLC*, 2025 WL 894980, at *4 (S.D. Ill. Mar. 24, 2025) (assessing consumer confusion is fact-intensive). "That question of fact may be resolved on summary judgment only 'if the evidence is so one-sided that there can be no doubt about how the question should be answered." *Id.*; *Packman*, 267 F.3d at 637; *Door Sys., Inc. v. Pro-Line Sys.*, 83 F.3d 169, 171 (7th Cir. 1996). This is not a case where the evidence is so one-sided that the question of customer confusion can be decided at summary judgment; therefore, this argument fails.

### III. Validity of Kyjen's Trademark

Lastly, ThinkPet makes a half-hearted attempt to undermine the lawsuit because Kyjen made a clerical error when it registered the trademark. (Dkt. 89 at 3). When Kyjen filed the trademark, it used its former name, Outward Hound, LLC, instead of its new name, The Kyjen Company, LLC on the application. (Dkt. 95 at 3–4). ThinkPet does not dispute this. (*See* Dkt. 89). In determining the owner of a trademark, the Court looks to "(1) the parties' objective intentions or expectations; (2) who the public associates with the mark; and (3) to whom the public looks to stand behind the quality of goods or services offered under the mark." *Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab.*, 859 F.3d 1023, 1029 (Fed. Cir. 2017).

Here, ThinkPet provides no basis to conclude that any of these factors weigh in favor of finding the trademark void. (*See* Dkt. 89; Dkt. 99). When it noticed the mistake, Kyjen filed a post-publication amendment, which the USPTO accepted on February 27, 2018. (Dkt. 95 at 3). Further, the record suggests that Kyjen maintains the same business as Outward Hound and is a successor

entity. (Dkt. 96 ¶¶ 6–7, 17). The public would, thus, likely associate the Outward Hound name with Kyjen. Accordingly, this argument fails.

## **CONCLUSION**

For the foregoing reasons, the Court denies ThinkPet's Motion for Summary Judgment [88].

_____
Virginia M. Kendall
United States District Judge

Date: September 22, 2025